IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-1672-WYD-SKC

BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY;
BOARD OF COUNTY COMMISSIONERS OF SAN MIGUEL COUNTY; and
CITY OF BOULDER,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC.;
SUNCOR ENERGY SALES INC.;
SUNCOR ENERGY INC.; and
EXXON MOBIL CORPORATION,

      Defendants.

---

## REPLY MEMORANDUM OF LAW

## IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................iii

INTRODUCTION ...............................................................................................................1

ARGUMENT........................................................................................................................2

I.    JURISDICTION CANNOT BE BASED ON SPECULATION.......................................2

II.   DEFENDANTS IMPERMISSIBLY ATTEMPT TO REWRITE PLAINTIFFS' COMPLAINT AND SPECULATE ABOUT ITS IMPACTS .............................................3

III.  AN UNPLED FEDERAL COMMON LAW CLAIM DOES NOT CREATE JURISDICTION; THESE CLAIMS ARE NOT GOVERNED BY FEDERAL LAW..5

   A.  Under the well-pleaded complaint rule, a federal common law claim that Plaintiffs did not plead is not a basis for federal jurisdiction............................................6

   B.  Plaintiffs have not "artfully pleaded" around federal common law...............................7

      1.  Exxon previously argued federal common law does not govern......................8

      2.  *AEP* and *Kivalina* did not hold federal law governs all climate cases...............8

      3.  This case does not call for a uniform rule or implicate federal interests ........10

IV.   THERE IS NO *GRABLE* JURISDICTION; NONE OF THE *ELEMENTS* OF PLAINTIFFS' CLAIMS INCLUDE A SUBSTANTIAL FEDERAL QUESTION......12

   A.  No federal issue is an essential element of any of Plaintiffs' claims ............................12

   B.  No federal law or decision is disputed or central to this case......................................14

   C.  Defendants' broad arguments would disrupt the proper federal/state balance..........15

V.    NEITHER THE CLEAN AIR ACT NOR THE FOREIGN AFFAIRS DOCTRINE COMPLETELY PREEMPT THESE STATE CLAIMS FOR DAMAGES ...................15

   A.  The foreign affairs doctrine does not preempt and never *completely* preempts ...........15

   B.  The CAA is not one of the rare statutes that completely preempts state law .............16

VI.   DEFENDANTS' REMAINING ARGUMENTS ARE MERITLESS ...........................17

A.   Defendants were not acting under federal officers ...........................................17

B.   Plaintiffs' injuries did not arise on federal enclaves........................................18

C.   OSCLA does not create federal jurisdiction...................................................19

D.   Defendants fail to establish bankruptcy jurisdiction ......................................20

CONCLUSION............................................................................................................20

TABLE OF AUTHORITIES

CASES                                                                      Page(s)

*In re "Agent Orange" Products Liability Litigation,*
    635 F.2d 987 (2d Cir. 1980) ................................................................................11

*Akin v. Ashland Chemical Co.,*
    156 F.3d 1030 (10th Cir. 1998)....................................................... 19 n.15

*American Electric Power Co., Inc. v. Connecticut,*
    564 U.S. 410 (2011) ...............................................................................9

*American Insurance Association v. Garamendi,*
    539 U.S. 396 (2003)..................................................13 n.9, 16 & n.13

*Amoco Product Co. v. Sea Robin Pipeline Co.,*
    844 F.2d 1202 (5th Cir. 1988)........................................................ 19-20

*Bader Farms, Inc. v. Monsanto Co.,*
    No. 16-cv-229, U.S. Dist. LEXIS 21925 (E.D. Mo. Feb. 16, 2017) ................................. 14 n.11

*Bank of America National Trust & Savings Association v. Parnell*
    352 U.S. 29 (1956).............................................................................3, 10

*Becker v. Ute Indian Tribe of Uintah & Ouray Reservation,*
    770 F.3d 944 (10th Cir. 2014)...........................................................12

*Beneficial National Bank v. Anderson*
    539 U.S. 1 (2003).................................................................................15

*Bennett v. Southwest Airlines Co.,*
    484 F.3d 907 (7th Cir. 2007)............................................12-13, 14 n.12

*Blanco v. Federal Express Corp.*
    No. Civ. 16-561-C, 2016 U.S. Dist. LEXIS 125349 (W.D. Okla. Sept. 15, 2016).....................6

*Board of County Commissioners v. Tennessee Gas Pipeline Co.,*
    850 F.3d 714 (5th Cir. 2017).........................................................13-14

*Brown v. Parsons Inspection,*
    No. 12-01652, 2012 U.S. Dist. LEXIS 148371 (D.N.J. Oct. 16, 2012)........................3

*California v. BP P.L.C.,*
    No. 17-06011, 2018 U.S. Dist. LEXIS 32990 (N.D. Cal. Feb. 27, 2018) ........................... 7 n.4

*California Dump Truck Owners Association v. Nichols,*
  784 F.3d 500 (9th Cir. 2015)................................................................. 16 n.14

*Camacho v. Honda Motor Co.,*
  741 P.2d 1240 (Colo. 1987) ................................................................. 11 n.7

*Caterpillar, Inc. v. Williams,*
  482 U.S. 386 (1987) ................................................................................3, 6

*City and County of San Francisco v. PG&E Corp.,*
  433 F.3d 1115 (9th Cir. 2006)....................................................................20

*Clark v. Allen,*
  331 U.S. 503 (1947)....................................................................................16

*Crosby v. National Foreign Trade Council,*
  530 U.S. 363 (2000) ...........................................................................13 n.9, 16

*County of San Mateo v. Chevron Corp.,*
  294 F. Supp. 3d 934 (N.D. Cal. 2018) ......................................... 13 & n.9, 17

*Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.,*
  693 F.3d 1195 (10th Cir. 2012).............................................................*passim*

*In re Dicamba Herbicides Litig.,*
  No. 18-cv-2820, 2018 U.S. Dist. LEXIS 91603 (E.D. Mo. May 31, 2018) ..................... 14 n.11

*Eastern States Health & Welfare Fund v. Philip Morris, Inc.,*
  11 F. Supp. 2d 384 (S.D.N.Y. 1998) ..........................................................18

*Empire Healthcare Assurance, Inc. v. McVeigh,*
  547 U.S. 677 (2006) ...................................................................................16

*Environmental Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P.,*
  106 F. Supp. 2d 1088 (D. Colo. 2000)...........................................................7

*Fairfield Industries v. EP Energy E&P Co., L.P.,*
  No. H-12-2665, 2013 U.S. Dist. LEXIS 196376 (S.D. Tex. May 2, 2013) ..................... 19 n.16

*Fajen v. Foundation Reserve Insurance Co.,*
  683 F.2d 331 (10th Cir. 1982)....................................................................2-3

*Fayard v. Northeast Vehicle Services, LLC,*
  533 F.3d 42 (1st Cir. 2008).........................................................................17

*Fung v. Abex Corp.*,
    816 F. Supp. 569 (N.D. Cal. 1992) ........................................................................... 19

*Gilmore v. Weatherford*,
    694 F.3d 1160 (10th Cir. 2012) ............................................................................... 14

*Grable & Sons Metal Products v. Darue*,
    545 U.S. 308 (2005) .................................................................................... 2, 12, 15

*Heath v. Ortho Pharmaceutical Corp.*,
    722 P.2d 410 (Colo. 1986) ................................................................................ 11 n.7

*Howard v. Hibbard Brown & Co.*,
    835 F. Supp. 1331 (D. Kan. 1993) .............................................................................. 7

*Illinois v. City of Milwaukee*,
    406 U.S. 91 (1972) ..................................................................................................... 7

*International Paper Co. v. Ouellette*,
    479 U.S. 481 (1987) ........................................................................................ 9 n.6, 11

*Jackson v. Johns Manville Corp.*,
    750 F.2d 1314 (5th Cir. 1985) ....................................................................... 8, 10-11

*McKay v. City and County of San Francisco*,
    No. 16-cv-03561, 2016 U.S. Dist. LEXIS 178436 (N.D. Cal. Dec. 23, 2016) ......... 14

*Medellin v. Texas*,
    552 U.S. 491 (2008) ................................................................................................. 16

*Miree v. De Kalb County*,
    433 U.S. 25 (1977) ................................................................................................... 10

*In re National Security Agency Telecommunications Records Litigation*,
    483 F. Supp. 2d 934 (N.D. Cal. 2007) ............................................................... 14 n.12

*Native Village of Kivalina v. ExxonMobil Corp.*,
    696 F.3 849 (9th Cir. 2012) ....................................................................................... 9

*North Carolina ex rel. Cooper v. Tennessee Valley Authority*,
    615 F.3d 291(4th Cir. 2010) .............................................................................. 16 n.14

*O'Melveny & Myers v. FDIC*,
    512 U.S. 79 (1994) ............................................................................................. 10-11

*Pacific Operators Offshore, LLP v. Valladolid,*
    565 U.S. 207 (2012) ........................................................................................................19

*Pacor, Inc. v. Higgins,*
    743 F.2d 984 (3d Cir. 1984) ..........................................................................................20

*Palmer v. A.H. Robins Co.,*
    684 P.2d 187(Colo. 1985) .......................................................................................11 n.7

*PetQuaters, Inc. v. Depository Trust & Clearing Corp.,*
    559 F.3d 772 (8th Cir. 2009) ................................................................................14 n.11

*Plains Gas Solutions, LLC v. Tennessee Gas Pipeline Co., LLC,*
    46 F. Supp. 3d 701 (S.D. Tex. 2014) ....................................................................19 n.16

*Richards v. Lockheed Martin Corp.,*
    No. 11-cv-1033, 2012 U.S. Dist. LEXIS 191331 (D.N.M. Mar. 1, 2012) ........................19 n.15

*Rivet v. Regions Bank of Louisiana,*
    522 U.S. 470 (1998) ...........................................................................................................7

*Rosseter v. Industrial Light & Magic,*
    No. C-08-04545, 2009 U.S. Dist. LEXIS 5307 (N.D. Cal Jan. 27, 2009) ........................19 n.15

*Ryan v. Dow Chemical Co..,*
    781 F. Supp. 934 (E.D.N.Y. 1992) .................................................................................18

*Sam L. Majors Jewelers v. ABX, Inc.,*
    117 F.3d 922 (5th Cir. 1997) ..........................................................................................7

*Speer v. First Savings Bank,*
    No. Civ 01-1005, 2001 U.S. Dist. LEXIS 27488 (D.N.M. Nov. 20, 2001) ........................7 n.3

*Tafoya v. American Family Mutual Insurance Co.,*
    No. 08-cv-01656, 2009 U.S. Dist. LEXIS 6370 (D. Colo. Jan. 28, 2009) ....................................3

*Targa Midstream Services LLC v, Crosstex Processing Services, LLC,*
    No. H-14-2256, 2014 U.S. Dist. LEXIS 199746 (S.D. Tex. Nov. 25, 2014) ..........................19

*Tempe v. Synthes Corp.,*
    498 U.S. 5 (1990) ..........................................................................................................20

*Turgeau v. Administrative Review Board,*
    446 F.3d 1052 (10th Cir. 2006) ....................................................................................7 n.3

*Union Oil Co. of California v. Shaffer*,
  563 B.R. 191 (E.D. La. 2016) ................................................................20

*United States v. Pink*,
  315 U.S. 203 (1942) ................................................................ 16 n.13

*United States v. Walczak*,
  783 F.2d 852 (9th Cir. 1986) ................................................. 16 n.13

*Walker v. Ford Motor Co.*,
  406 P.3d 845 (Colo. 2017) ......................................................... 11 n.7

*Watson v. Philip Morris Companies*,
  551 U.S. 142 (2007) ................................................................18

*Wayne v. DHL Worldwide Express*,
  294 F.3d 1179 (9th Cir. 2002) ....................................................7 & n.4

*Winters v. Diamond Shamrock Chem. Co.*,
  149 F.3d 387 (5th Cir. 1998) ........................................................18

*Woodward Governor Co. v. Curtiss-Wright Flight Systems*,
  64 F.3d 123 (2d Cir. 1999) ...........................................................10

*Wyoming v. Livingston*,
  443 F.3d 1211 (10th Cir. 2006) ..................................................17-18

## FEDERAL STATUTES & REGULATIONS

Energy Independence and Security Act of 2007, 42 U.S.C. §§ 17001-17386 .................................. 4 n.2

Energy Policy and Conservation Act, 42 U.S.C. §§ 6201-6422 ......................................... 4 n.2

The Clean Air Act, 42 U.S.C. § 7604 ...........................................................17

43 U.S.C. § 1341 ...........................................................................18

43 U.S.C. § 1348 ...........................................................................18

30 C.F.R. § 550 .........................................................................17-18

## OTHER AUTHORITIES

Restatement (Second) of Torts § 821B.............................................................4

Restatement (Second) of Torts § 828 .......................................................................................................4

## INTRODUCTION

Defendants do not show that this Court has jurisdiction over these Colorado claims for Colorado injuries. Their argument that federal law controls this case is an ordinary federal preemption *defense*, which can be raised in state court; defenses do not create federal jurisdiction.

Defendants spend little time addressing the law governing removal jurisdiction. Instead, they distort Plaintiffs' complaint to make this case *seem* federal. The linchpin of this effort is the false premise that Plaintiffs seek to regulate greenhouse gas emissions. Plaintiffs do not sue Defendants for emitting, nor do they sue to challenge or establish any federal emissions regulation or policy. Plaintiffs do not seek to solve the global climate crisis in this case. They seek only compensation for their own local harms. Suits, like this one, against manufacturers for damages caused by the intended use of their products, are routinely litigated under state common law; they are not inherently federal claims, nor subject to federal jurisdiction. Defendants' assertion that this suit may interfere in unspecified ways with generalized federal policies ignores the case Plaintiffs actually pleaded, and is not a basis for jurisdiction. Plaintiffs are masters of their complaint, not Defendants.

Defendants' arguments for jurisdiction fail. *First,* Defendants' concession that Plaintiffs have pleaded only claims under Colorado law is fatal to the federal common law argument that takes up most of their brief. Defendants' position that Plaintiffs should have pleaded a federal claim does not create federal jurisdiction. Moreover, Exxon's prior briefing refutes that federal common law necessarily controls this case. When Exxon was sued by plaintiffs who invoked federal common law, Exxon *denied* that federal common law could apply because, although "global climate change is predominantly a matter of federal concern, [that] has nothing to do with whether private damages

claims raise uniquely federal interests *of the type that justify applying federal common law.*"[1] Jurisdiction cannot rest on a federal claim Plaintiffs did not plead and Defendants deny exists.

*Second*, under *Grable & Sons Metal Prods. v. Darue*, 545 U.S. 308 (2005), a case cannot be removed unless a substantial federal issue is an "essential element" of Plaintiffs' claim. Defendants raise issues relevant only to defenses; they identify no issue that Plaintiffs must prove to prevail.

*Third*, jurisdiction is only proper under the complete preemption doctrine if a federal statute exclusively regulates the conduct, and provides a substitute federal claim to replace state law claims. The foreign affairs doctrine, which is not based on a statute, is an ordinary preemption defense; it also does not apply here. Similarly, the Clean Air Act does not completely preempt Plaintiffs' claims. The Act expressly preserves state law, does not address Defendants' tortious conduct, and provides no compensation for Plaintiffs' harms.

*Last*, Defendants' remaining arguments are meritless. Plaintiffs' injuries did not arise in any federal enclave; no federal officer directed Defendants to market fossil fuels at levels they knew would cause harm; these claims do not arise out of offshore drilling activities on the Outer Continental Shelf; and Defendants do not show this case relates to a bankruptcy proceeding.

## ARGUMENT

## I.   JURISDICTION CANNOT BE BASED ON SPECULATION

Defendants bear the burden to establish this Court's jurisdiction. Pls.' Mem. Supp. Mot. to Remand, at 5-6 (Dkt. No. 44) (hereinafter, "Mot."). *See also Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201 (10th Cir. 2012). If there is any doubt as to jurisdiction, the Court must remand. *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). Defendants'

---

[1] Br. of Respondents-Appellees at 57 & n.23, *Native Village of Kivalina v. Exxon Mobil Corp.*, No. 09-17490 (9th Cir. June 30, 2010) (Exhibit 1).

speculation about the existence of jurisdictional facts or a need for federal law does not suffice. *Bank of Am. Nat'l Trust & Sav. Ass'n v. Parnell*, 352 U.S. 29, 33-34 (1956) (need for federal common law cannot be founded on speculative impacts on federal interests); *Devon*, 693 F.3d at 1211 (*Grable* jurisdiction inappropriate where "there is only a possibility that a federal issue might arise"); *Tafoya v. Am. Family Mut. Ins. Co.*, No. 08-cv-01656, 2009 U.S. Dist. LEXIS 6370, at *5 (D. Colo. Jan. 28, 2009) (defendants cannot establish jurisdiction through "conclusory assertions or outright speculation"); *Brown v. Parsons Inspection*, No. 12-01652, 2012 U.S. Dist. LEXIS 148371, at *3-7 (D.N.J. Oct. 16, 2012) (complete preemption cannot be based on Defendants' speculation).

## II.   DEFENDANTS IMPERMISSIBLY ATTEMPT TO REWRITE PLAINTIFFS' COMPLAINT AND SPECULATE ABOUT ITS IMPACTS

Defendants must establish jurisdiction over *this* case. They cannot "create the prerequisites to removal by ignoring the set of facts" Plaintiffs pleaded "and argu[e] that there are different facts [plaintiffs] might have alleged that would have constituted a federal claim." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396-97 (1987). Defendants' removal effort disregards this instruction.

*Plaintiffs do not seek to limit emissions or regulate emitters.* Defendants ignore that "Plaintiffs **do not** seek . . . to enforce emissions controls of any kind." Compl. ¶ 542. Defendants are not being sued for emitting, but because they injured Plaintiffs by selling and promoting fossil fuels at levels they knew would cause the harm. Mot. at 3. Plaintiffs simply seek to shift some of the costs of the injuries from Defendants' conduct to those who caused it. This case is no different than the tobacco litigation brought by almost every state under state law. There, states recovered their increased healthcare costs, due to smoking, from tobacco companies who sold cigarettes all over the world. *See Id.* at 2. The states' claims did not regulate any level of tobacco sales or use. And the conduct of smokers – who may have smoked anywhere – was not in issue; they were simply steps in the causal

chain. Here too, no court needs to consider whether third party emitting activity is tortious. Where a manufacturer's product causes harm in many states – like asbestos, lead paint, and tobacco – there is no bar to each state applying its own law to its injuries. *Id.* at 15-16.

*The federal government has not considered or regulated the conduct for which Defendants are being sued, much less weighed its benefits.* Defendants' liability arises from the levels at which they sold and promoted fossil fuels, with the knowledge that it would cause harm. The U.S. government does not mandate, approve or decide fossil fuel production or sales levels. And there is federal policy focused on *reducing* demand for fossil fuels through vehicle fuel efficiency standards.[2] If the type of comprehensive federal policy that Defendants describe existed (and had the preemptive power they suggest), federal law would preempt all state efforts that could conceivably affect fossil fuel use, including state carbon or ordinary gasoline taxes.

*Plaintiffs' nuisance claims do not require any assessment of the costs and benefits of fossil fuel use.* Even if the federal government had comprehensively balanced fossil fuel development and the environment, which it has not, this case would not require a reassessment. Plaintiffs' claims take no position on the social utility of fossil fuels. The question here is whether there is social utility in *Defendants* not compensating for the injuries they caused, *see e.g.*, RESTATEMENT (SECOND) of TORTS, § 821B, cmt. I ("In determining whether to award damages, the court's task is to decide whether it is unreasonable to engage in the conduct without paying for the harm done."); and in Defendants concealing and misrepresenting the dangers of fossil fuel use. *Id.* § 828 cmt. E (conduct that is "contrary to standards of decency" has no social utility). This case does not require a court to balance the abstract costs and benefits of global fossil fuel use.

---

[2] *E.g.* Energy Policy and Conservation Act, P.L. 94-163, 42 U.S.C. §§ 17001-17386; Energy Independence and Security Act, P.L. 110-140, 42 U.S.C. §§ 6201-6422.

*Plaintiffs do not seek to limit anyone's production, sale or use of fossil fuels; they merely seek compensation for their injuries.* Defendants speculate that if they are liable, they would have to "(i) modify production methods, (ii) reduce production activities, or (iii) shift costs to consumers." Defs.' Mem. Opp. Mot. to Remand at 17 (Dkt. No. 48) (hereinafter, "Opp'n"). They make no such showing; and none of those actions change any federal policy. This case does not implicate Defendants' production methods, nor do they explain how it would. More fundamentally, the federal government does not have an interest, much less the required overriding one, in preserving fossil fuel demand.

*Defendants have not shown this case will affect foreign relations.* Here, three local governments sue private companies for specific injuries and tortious acts. No foreign or federal government acts are at issue; no international agreement or U.S. foreign policy addresses private conduct or provides immunity for contributing to climate alteration; and the only international negotiations Defendants cite were to *reduce* fossil fuels reliance. This case does not conflict with U.S. foreign policy.

## III.   AN UNPLED FEDERAL COMMON LAW CLAIM DOES NOT CREATE JURISDICTION; THESE CLAIMS ARE NOT GOVERNED BY FEDERAL LAW

Plaintiffs have pleaded Colorado state law claims. Under the well-pleaded complaint rule, jurisdiction cannot be based on federal common law claim they did not plead. Mot. at 7-12. The argument that federal common law *necessarily* applies, and therefore state law cannot, is an argument for an ordinary preemption defense, not a basis for jurisdiction. *See id.* at 9-10. *Contra* Opp'n at 13.

Defendants' federal common law argument does not fall within any exception to the well-pleaded complaint rule. Their claim that Plaintiffs "artfully pled" around federal jurisdiction, Opp'n at 18, would only make sense if Plaintiffs pleaded around a federal claim they *could have* and *were required to* bring. Their argument is belied by Exxon's prior argument that federal common law may be asserted only by a State seeking injunctive relief. Ex. 1 at 56-61. Now Defendants say federal

common law is broader, but this Court has no jurisdiction based on an unpled and untested federal common law claim that they deny Plaintiffs can bring. Federal common law cannot be so broad that it creates jurisdiction over all state law claims, but so narrow that Plaintiffs cannot invoke it.

### A. Under the well-pleaded complaint rule, a federal common law claim that plaintiffs did not plead is not a basis for federal jurisdiction

Jurisdiction is foreclosed by the well-pleaded complaint rule because Plaintiffs did not plead federal claims. Defendants concede that "Plaintiffs have pleaded claims *under Colorado law*." Opp'n at 14 (emphasis added). Nonetheless, they argue that these state law claims "arise under" federal law, Opp'n at 17, but "a defendant cannot . . . transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar*, 482 U.S. at 399.

The Supreme Court and Tenth Circuit have repeatedly held that a complaint that pleads no federal claims can only be removed under the *Grable* and complete preemption doctrines. *See Devon*, 693 F.3d at 1202-04. Defendants concede their *Grable* argument is "distinct," from their federal common law argument. Opp'n at 18. They also do not suggest federal common law completely preempts, and admit their federal common law argument does not fit within that doctrine as it "is not premised on *replacing* state law with federal law." *Id.* Since "arising under federal common law" is not an exception to the well-pleaded complaint rule, Mot. at 9-12, their argument fails.

Defendants' lead authority for ignoring the well-pleaded complaint rule is an unpublished case contravening Supreme Court precedent. In *Blanco v. Federal Express Corp.,* No. Civ.16-561-C, 2016 U.S. Dist. LEXIS 125349 (W.D. Okla. Sept. 15, 2016), the court removed a state common law claim because it had "been preempted by federal common law." *Id.* at *5-6. A case cannot be removed based on a federal preemption defense. *Caterpillar*, 482 U.S. at 393. *Blanco* also misapplied the "artful pleading" doctrine it seemed to invoke. 2016 U.S. Dist. LEXIS 125349, at *7-8. The

Supreme Court was clear in *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998), that "artful pleading" requires that "federal law completely preempts" a state claim; it is not a distinct doctrine.[3]

None of Defendants' other out-of-circuit cases support a new exception to the well-pleaded complaint rule. While *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184-85 (9th Cir. 2002), and *Sam L. Majors v. ABX, Inc.*, 117 F.3d 922, 926 (5th Cir. 1997), stated that federal jurisdiction exists if the claims "arise under federal common law," neither addressed the well-pleaded complaint rule or Supreme Court removal cases.[4] Both cited *Illinois v. City of Milwaukee*, 406 U.S. 91 (1972) ("*Milwaukee I*"), which was not a removal case and does not hold that a *defendant* can create jurisdiction by re-characterizing a well-pleaded state claim: there the *plaintiff* invoked federal common law *and* federal jurisdiction.[5] Both also contravene established Tenth Circuit law.

### B.  Plaintiffs have not "artfully pleaded" around federal common law

Plaintiffs are not pleading around federal common law. *Contra* Opp'n at 6, 18. Since the "artful pleading" doctrine requires complete preemption, and Defendants admit federal common law does not completely preempt, the doctrine cannot apply. In any case, the notion of "artful pleading" cannot "abrogate the rule that a plaintiff is master of his or her own complaint." *Howard v. Hibbard Brown & Co.*, 835 F. Supp. 1331, 1333-34 (D. Kan. 1993) (internal quotations omitted). Defendants must show a bad faith "attempt to conceal the fact that the claim was truly federal." *Envtl. Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P.*, 106 F. Supp. 2d 1088, 1093

---

[3] *Accord Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060-61 (10th Cir. 2006); *Speer v. First Sav. Bank*, No. CIV 01-1005, 2001 U.S. Dist. LEXIS 27488, *6-7 (D.N.M. Nov. 20, 2001).

[4] *Wayne* denied jurisdiction because federal common law did not govern. 294 F.3d at 1185. *California v. B.P. P.L.C.*, No. 17-06011, 2018 U.S. Dist. LEXIS 32990, at *14 (N.D. Cal. Feb. 27, 2018) relied wholly on *Wayne* to remove the court-deemed federal claims. *California I* is on appeal.

[5] Br. of Pl.'s, *Illinois v. City of Milwaukee*, No. 49 at 2 (Supreme Court, February 19, 1972) (Exhibit 2).

(D. Colo. 2000). There is no bad faith where Defendants deny the federal claim exists.

### 1. Exxon previously argued federal common law does not govern

Defendants argue that this suit is transboundary and "inherently implicate[s] interstate and international concerns that are of uniquely federal interest." Opp'n at 10-11. In *Kivalina*, Exxon argued the opposite: there is no such uniquely federal interest and a suit does *not* "requir[e] the application of federal common law, merely because the conflict is not confined within the boundaries of a single state." Ex. 1 at 60 (quoting *Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1324-25 (5th Cir. 1985) (en banc)). Instead, "only suits by [states] *implicating a sovereign interest* in abating interstate pollution give rise to federal common law." *Id.* Thus, Exxon denied that a municipality could plead federal common law claims for interstate pollution; now it says they must plead such claims. *Id.* at 60-61.

Exxon also pivots 180 degrees from its position in *Kivalina* regarding the remedy and conduct actionable under federal common law. Here, Defendants argue that damages claims must be pled under federal common law, Opp'n at 15-16, but they told the Ninth Circuit that "a federal common law nuisance claim cannot seek damages." Ex. 1 at 56. Similarly, Exxon now says that *only* federal common law may be used to hold a *seller* liable for contributing to a nuisance based on the foreseeable consequences of its products' uses; but in *Kivalina*, Exxon noted that federal common law was limited to claims against out-of-state pollution "sources", *i.e.*, direct emitters. *Id.* at 58-59.

As Exxon observed in *Kivalina*, federal common law is narrow; it does not swallow Plaintiffs' claims. It was not "artful" for Plaintiffs to not plead a federal common law claim.

### 2. *AEP* and *Kivalina* did not hold federal law governs all climate cases

Far from holding that federal common law controls all climate cases, *AEP* and *Kivalina* did not even hold that federal common law governed in emissions cases (which these Plaintiffs' case is

not). In both cases, the plaintiffs explicitly pleaded federal common law claims, and sued emitters for direct emissions. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 415 (2011); *Kivalina*, 696 F.3d 849, 853-54 (9th Cir. 2012). The decisions limited the availability of federal common law in emissions cases, holding that the CAA displaced the federal common law claims that were pleaded. *See AEP*, 540 U.S. at 423-24; *Kivalina*, 696 F.3d at 856-58. Both courts *also* recognized that plaintiffs could still plead state law claims, subject to a CAA preemption analysis.

The *AEP* Court observed that it had "not yet decided" whether political subdivisions, like Plaintiffs, "may invoke the federal common law of nuisance [even] to abate out-of-state pollution." 540 U.S. at 422. This hardly suggests that federal law *necessarily* governs here. The Court also did not reject state law, Opp'n at 8; it expressly left state nuisance law "open for consideration on remand." 564 U.S. at 429. So too in *Kivalina*, 696 F.3d at 856-58; "in state court . . . Kivalina [could] pursue whatever remedies it may have under state law to the extent their claims are not preempted" by the CAA. *Id.* at 866 (Pro, J., concurring).

Defendants' admission that *AEP* left open the question of whether the CAA preempted state law claims forecloses their argument that federal common law is exclusive. If the CAA did not preempt, plaintiffs would have state law claims: precisely what Defendants here argue is impossible. *See* Mot. at 13-14.[6] Defendants' argument – that if federal common law applies, state law cannot, even when federal common law is displaced, Opp'n at 13, 19-20 – directly contradicts the holdings in *AEP* and *Kivalina* that federal common law was displaced, but state law claims remained available. Displaced federal common law has no impact on state common law claims; it does not somehow

---

[6] The holding in *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 496-97 (1987) – that only *source* state law is not preempted in *emission* cases – does not bar these claims; this is not an emissions case and does not conflict with any comparable federal permitting scheme.

live on to create jurisdiction after it has been killed off as the source of a claim.

### 3. This case does not call for a uniform rule or implicate federal interests

Federal common law should not control this case. Federal common law is "limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 87 (1994). Defendants have previously denied that there is a unique federal interest here supporting the creation of federal common law, Ex. 1 at 57 & n. 23; and they do not show a conflict. Mot. at 15-20.

*First,* where "litigation is among private parties and no substantial rights or duties of the United States hinge on its outcome, application of federal common law is particularly inappropriate." *Woodward Governor Co. v. Curtiss-Wright Flight Sys.,* 164 F.3d 123, 128 (2d Cir. 1999) (internal quotations omitted). Here, Plaintiffs did not sue the government or challenge any of its decisions. *Supra* § II. This case does not implicate the "rights and duties" of the federal government.

*Second*, Defendants fail to show how "highly abstract" interests – in energy, the environment, the economy, Opp'n at 11 – are uniquely federal or justify federal common law. *Miree v. De Kalb Cty.*, 433 U.S. 25, 31-33 (1977); *supra* § II. These generalized interests do not justify displacing the traditional state law function of providing "compensation for injured plaintiffs." *Jackson*, 750 F.2d at 1325. Federal common law should not be applied when a purported conflict with federal interests is "speculative" or a "remote . . . possibility." *Parnell*, 352 U.S. at 33-34. Here, for example, "[a]ny effect state law recoveries would eventually have on the government's ability to obtain [fossil fuels] is far too indirect to justify the imposition of federal common law." *Jackson*, 750 F.2d at 1325.

*Third*, Defendants' argument that a uniform federal rule is needed to address interstate pollution is inapposite, Opp'n at 7-8; Defendants are not being sued as polluters. Regardless, Exxon's own *Kivalina* briefing confirms there is no unique federal interest in *all* interstate pollution

10

cases, just those that implicate the *conflicting* rights of States, which this does not. Ex. 1 at 57-59.

Furthermore, "there is no federal interest in uniformity for its own sake." *In re "Agent Orange" Prod. Liab. Litig.*, 635 F.2d 987, 993-94 (2d Cir. 1980). *See also O'Melveny & Myers*, 512 U.S. at 88. Here, there is no federal law that evinces a federal interest in uniformity. In *Ouellette*, by contrast, the federal law mandated a permitting scheme for particular levels of discharge, and the possibility of disrupting that permitting drove the uniformity concerns. 479 U.S. at 496-97. No uniform federal scheme governs the level of fossil fuel production or sales that is at issue here.

Neither the conduct (the decision to sell fossil fuels at dangerous levels, while concealing the risks), nor the relief (compensation for actual harm), demands a uniform federal rule. Mot. at 19-20. The possibility of different tort standards faces every producer who, like Defendants, sells goods and causes harm in different states; this does not require a single federal tort standard. *E.g. Jackson*, 750 F.2d at 1324. While this is not a products liability case, Defendants' uniformity concerns would apply equally there. Yet there is no federal common law of products liability, and suits for defective products sold nationally – even ones that are directly regulated by the federal government, like automobiles and pharmaceuticals – are tried in state court all the time.[7]

Defendants are not being asked to change their behavior. *Contra* Opp'n at 17. A damages action does not raise the uniformity concerns that an injunction to shut down specific, out-of-state pollution sources does (as in the prior federal common law pollution cases). *See* Mot. at 17-19, Ex. 1 at 58-60. In the injunction context, the state with the highest standard has an effective veto over any other state's law. Mot. at 19-20. Even if there are different rules in a damages action, that would

---

[7] *E.g. Palmer v. A.H. Robins Co.*, 684 P.2d 187, 195 (Colo. 1985) (Dalkon Shield); *Walker v. Ford Motor Co.*, 406 P.3d 845 (Colo. 2017) (Ford Explorers); *Heath v. Ortho Pharm. Corp.*, 722 P.2d 410 (Colo. 1986) (contraceptive); *Camacho v. Honda Motor Co.*, 741 P.2d 1240 (Colo. 1987) (Honda motorcycles).

merely mean defendants might not have to compensate victims in certain states. Defendants would have federal law wrongly intrude into myriad contexts traditionally governed by state law.[8]

## IV. THERE IS NO *GRABLE* JURISDICTION; NONE OF THE *ELEMENTS* OF PLAINTIFFS' CLAIMS INCLUDE A SUBSTANTIAL FEDERAL QUESTION

Defendants ignore the narrow boundaries of *Grable* jurisdiction. Jurisdiction is not proper for cases that "implicate," or are "entangled with" federal issues, Opp'n at 21, 22, but only in the "small category" where a substantial, disputed federal issue is an "essential element" of *plaintiff's* claims. *Becker v. Ute Indian Tribe of Uintah & Ouray Reservation*, 770 F.3d 944, 947-48 (10th Cir. 2014).

The federal "concerns" Defendants raise are speculative and based on mischaracterizations of the Complaint. *Supra* § II. If allegations of such general federal "concerns" did suffice, jurisdiction would lie over countless cases, contrary to *Grable*'s instruction not to upset the proper balance of state/federal authority. Mot. at 21. Not surprisingly, courts have rejected arguments indistinguishable from Defendants'. For example, the notion that there is federal jurisdiction over all commercial air travel suits based on federal authority over air safety is "well beyond the scope" of *Grable. Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007).

### A. No federal issue is an essential element of any of Plaintiffs' claims

Defendants do not even try to show that any federal question is an "'essential element'" of Plaintiffs' claims. *Becker*, 770 F.3d at 947 (quoting *Grable*, 545 U.S. at 315). *Grable* is governed by the well-pleaded complaint rule: "elements" are what a *plaintiff* must plead and prove to prevail. Mot. at 22-24. Defendants argue only that this case raises "federal concerns," but point to none which

---

[8] This case is indistinguishable from state law claims for damages from lead paint manufacturers, asbestos and tobacco companies, or the oil companies that added MTBE to their gasoline. Mot. at 8, 15-16. As here, those companies sent products and caused harm all over the country. Defendants' argument for uniformity regarding anything that "implicate[s] GHG emissions" would federalize the fifty different state fuel tax rates, and fifty different state laws *specifically limiting the GHG emissions*.

Plaintiffs must prove. Opp'n at 22. Many cases raise "federal concerns," but where, as here, these issues at best only create defenses, they are not a basis for jurisdiction.

Defendants' first federal "concern" is speculation about interference with foreign policy, *id.*, which is not an element of Plaintiffs' claims. They allege only an unexplained conflict with international agreements, which they admit is not an "essential element," *id.* at 23, thus foreclosing their argument. In any event, they do not meet their burden to prove a conflict, and any alleged foreign policy concerns at most implicate preemption defenses. Mot. at 24.[9]

Defendants' second purported federal concern – the unfounded assertion that this case requires a "reassessment" of some federal government cost-benefit analysis – is also not a basis for jurisdiction. Opp'n at 24. The government has not assessed the costs and benefits of fossil fuel activities at a global, industry or company level; more important, it has not assessed the costs and benefits of companies promoting fossil fuels while not compensating for the harms they have caused. *Supra* § II. Even if Defendants *had* identified any such assessment, and it was enshrined in law, that could only support an ordinary preemption defense. *Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938 (N.D. Cal. 2018). Defendants' view would lead to virtually limitless federal jurisdiction; thus courts have rejected these arguments. *See e.g.*, *Bennett*, 484 F.3d at 909.

Third, Defendants misread Plaintiffs' claims as "attacks on federal regulatory decisions." Opp'n at 26. Defendants identify no regulation that Plaintiffs challenge, nor any regulatory decision that is an element of Plaintiffs' claims. Mot. at 23. In *Bd. of Comm'rs v. Tenn. Gas Pipeline Co.*, 850 F.3d

---

[9] Defendants cite only preemption cases. Opp'n at 22 (citing *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396 (2003) and *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)). They also fail to explain *how* this case could "supplant" foreign policy. Opp'n at 23. Defendants cannot simply "gesture" at impacts to U.S. foreign relations, *San Mateo*, 294 F. Supp. 3d at 938, which are far from obviously implicated in this case addressing only their specific, commercial behavior. *Supra* § II. Defendants also misstate the foreign affairs *preemption* doctrine. *See* Mot. at 34; *infra* § V.

714, 722-724 (5th Cir. 2017), the court made clear that a "federal regulatory scheme is only relevant" if it "provides the underlying legal basis for" plaintiffs' claims: there, the standard of care plaintiffs needed to prove was from federal law; here, the standard is provided by state law.[10]

Defendants cite cases where, unlike here, the plaintiff directly challenged a federal act or regulation. For example, in *McKay v. City & Cty. of San Francisco*, No. 16-cv-03561, 2016 U.S. Dist. LEXIS 178436, at *13-15 (N.D. Cal. Dec. 23, 2016), plaintiffs had to show that an FAA-determined flight path was a nuisance. The court rejected the argument that merely implicating federal interests in the management of national airspace – *i.e.*, the same sort of general federal concerns Defendants raise here – creates jurisdiction. *Id.* at *13.[11] Here, Plaintiffs challenge no government decision. Defendants' theory would create jurisdiction over tort cases in any *field* the government regulates.

### B. No federal law or decision is disputed or central to this case

Defendants cite to the Complaint but identify no portion that challenges federal statutes or regulatory decisions. Opp'n at 27 (citing Compl. ¶¶ 111, 321–26). Nor do Defendants show federal issues are "central to the case." *Gilmore v. Weatherford*, 694 F.3d 1160, 1175 (10th Cir. 2012). An issue is not "substantial" merely because it "concern[s]" federal energy or environmental regulations or foreign policy. Opp'n at 27. The cases they cite do not support such broad jurisdiction.[12]

---

[10] Defendants cite the *district court's* language, which is at odds with the Circuit's holding. Opp'n at 26.

[11] Plaintiffs previously addressed *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772 (8th Cir. 2009). Mot. at 23. In *Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299, 2017 U.S. Dist. LEXIS 21925 at *8-9 (E.D. Mo. Feb 16, 2017), the plaintiff's claim depended on the validity of a specific federal decision: to deregulate particular seeds. Indeed, the same judge remanded a similar case, distinguishing *Bader* on grounds that "[t]his is not a case in which plaintiffs must show that a federal standard was violated to satisfy an element of their claim." *In re Dicamba Herbicides Litig.*, 1:18-md-2820-SNLJ, 2018 U.S. Dist. LEXIS 91603 *19 (E.D. Mo. May 31, 2018). So too here.

[12] In *Bennett*, 484 F.3d at 910, the court quoted cases arising from a federal agency's performance of its duties. As noted above, *Bennett* forecloses Defendants' argument. *In re Nat'l Sec. Agency Telecomms.*

### C. Defendants' broad arguments would disrupt the proper federal/state balance

Defendants argue that the responsibility to reduce GHGs has been lodged with the federal government, but admit states too have a role. Opp'n at 28. Regardless, this case is not about limiting GHG emissions. *Supra* § II. Plaintiffs simply seek damages for the harms Defendants have caused, as in any tort case. Win or lose, Defendants can sell as much fossil fuels as they choose. Further, *Grable* requires "judgments about congressional intent." 545 U.S. at 318. Here, Congress has not provided a claim for damages against these Defendants and has expressly preserved state law. *Infra*, § V. This "combination" is an "important clue to Congress' conception of the scope of jurisdiction." *Grable*, 545 U.S. at 318. This case is not akin to a challenge to Clean Air Act emissions standards or a CAA enforcement action. Defendants' argument sweeps far broader than *Grable*.

## V. NEITHER THE CLEAN AIR ACT NOR THE FOREIGN AFFAIRS DOCTRINE COMPLETELY PREEMPT THESE STATE CLAIMS FOR DAMAGES

### A. The foreign affairs doctrine does not preempt and never *completely* preempts

Complete preemption is not the same as ordinary preemption. Mot. at 28. Defendants' foreign affairs cases involve ordinary preemption. *Supra*, n. 9. Yet, only complete preemption can support jurisdiction, and *only if* Congress intends a federal statute to "provide [a substitute and] exclusive cause of action" for the claim asserted. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003). The foreign affairs doctrine is not statutory and does not provide a replacement claim; therefore it cannot completely preempt.

Foreign affairs concerns do not even support ordinary preemption. Only a conflict with

---

*Records Litig.*, 483 F. Supp. 2d 934, 943 (N.D. Cal. 2007) involved the expected assertion, by the government, of the state secrets privilege; it is nothing like this case.

federal law, not vague references to entanglement with foreign policy, can preempt. Mot. at 34.[13] All sorts of state laws can affect foreign relations and are not preempted. *Clark v. Allen*, 331 U.S. 503, 517 (1947). Even where a state decision interfered with federal foreign policy, the President's directive that Texas courts comply with the United States' international obligations lacked the power to preempt state law. *Medellin v. Texas,* 552 U.S. 491, 498-99, 523-32 (2008). Defendants' cases involve state laws that specifically addressed foreign policy issues – unlike the generally applicable tort principles here – and that actually conflicted with federal *law. Garamendi*, 539 U.S. at 415, 420, 421, 427; *Crosby*, 530 U.S. at 366, 378. Defendants do not show even a conflict with the nebulous foreign policy interests they cite, let alone an actual conflict with federal law. *Supra* § II.

### B.  The CAA is not one of the rare statutes that completely preempts state law

Defendants cite no authority suggesting the CAA completely preempts state common law tort claims. They rely on *ordinary* preemption cases, ignoring *complete* preemption.[14] The CAA does not completely preempt Plaintiffs' claims because Congress did not intend the CAA "to render inoperative *any* and *all* state laws." *Empire Health Choice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 698 (2006). Its preservation of state law demonstrates Congress' opposite intent. Mot. at 32-33.

First, Defendants' premise is wrong. Opp'n at 30. Plaintiffs do not challenge or seek to impose new federal emissions regulations. They do not seek to impose liability on emitters. *Supra* § II. They sue for harms caused by Defendants' sale of fossil fuels. The Clean Air Act is silent on that issue; it does not remedy Plaintiffs' harms or address Defendants' conduct. Further, Defendants

---

[13] *Garamendi* involved an executive agreement, which has "the full force of law." *United States v. Walczak*, 783 F.2d 852, 856 (9th Cir. 1986) (citing *United States v. Pink*, 315 U.S. 203 (1942)).

[14] *Cal. Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 502 (9th Cir. 2015) was not a complete preemption case, it involved ordinary preemption. *N.C. ex rel. Cooper v. TVA*, 615 F.3d 291 (4th Cir. 2010) also only addressed an ordinary CAA preemption issue.

have not shown any actual conflict with the Act. Even ordinary preemption is inapplicable.

Second, the CAA does not provide a replacement cause of action, much less "the exclusive" one, Opp'n at 30, because it does not "vindicate the same basic right" that Plaintiffs assert under state law. *See Devon,* 693 F.3d at 1207. A CAA suit only provides civil penalties to the United States, and only against violators of EPA's emission limits. 42 U.S.C. §§ 7604(a), (f)-(g). Plaintiffs' tort claims are "too far removed" from CAA suits, and the Act provides Plaintiffs no remedy. *Devon*, 693 F.3d at 1207. Defendants cite *Fayard v. Northeast Vehicle Servs., LLC*, 533 F.3d 42, 47-48 (1st Cir. 2008), but it *rejected* a complete preemption argument, nearly identical to Defendants', because it was not "clear that the [statute] provide[d] redress for the kind of nuisance claims" at issue. So too here.

Third, the CAA does not provide "exclusive regulation," even of emissions. The CAA's savings clauses expressly preserve state law and emissions regulation; this prevents complete preemption. Mot. at 29. Defendants suggest that the savings clauses "do[ ] not extend to multistate and multinational GHG emissions issues" is wrong, but also irrelevant. Opp'n at 32. The fact that Congress preserved state law is proof that it did not *intend* the CAA to be exclusive; the Act thus does not completely preempt. *San Mateo*, 294 F.3d at 938. The statute also does not distinguish between in-state and multi-state emissions; it does not address multinational emissions at all.

## VI.   DEFENDANTS' REMAINING ARGUMENTS ARE MERITLESS

### A.  Defendants were not acting under federal officers

Defendants have not made a "substantial factual showing [] justify[ing] removal." *Wyoming v. Livingston*, 443 F.3d 1211, 1225 (10th Cir. 2006). The fact that Exxon produced some unquantified fraction of its fossil fuels through government leases does not mean it is "acting under" a federal officer. The lease terms Defendants cite show only that Defendants, like the other outer continental shelf lessees, Not. ¶ 60, agreed to abide by federal *regulations. Id.* Ex. C ¶¶ 9, 10, 12, 15(d); 30 C.F.R.

§§ 550.201-202; 43 U.S.C. § 1341(b); 43 U.S.C. 1348(b)(3). Compliance with federal law is not enough for "acting under" removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007). Moreover, the plans referenced in that lease are set by *the operator*, not the government. 30 C.F.R. § 550.201.

Defendants claim there is jurisdiction because Exxon is "helping the government to produce an item that it needs." Opp'n at 35 (quoting *Watson*, 551 U.S. at 153). This allegation does not suffice. Jurisdiction requires an "unusually close" relationship between the government and the contractor; for example, the company that produced Agent Orange, to the government's specifications, for use in the Vietnam War. *Watson*, 551 U.S. at 153-154 (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998)). Here, Defendants' fossil fuels are primarily for general sale. Under their argument, "any state suit against a manufacturer whose product has at one time been averted and adapted for [government] use . . . would potentially be subject to removal, seriously undercutting the power of state courts to hear and decide basic tort law." *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 951 (E.D.N.Y. 1992). There is no support for Defendants' position.

Further, Defendants cite no evidence for their claim that the government "specifically dictated much of ExxonMobil's production, extraction, and refinement of fossil fuels." Opp'n at 35. Federal officers did not set their sales levels, or direct them to hide the risks. Mot. at 38-39.

Nor is there any colorable federal defense. *Supra* § V. Plaintiffs did not concede there is one, Opp'n at 35; they quoted the rule that even if a preemption argument might "win[]" in state court, "[it] will not support removal." Mot. at 10 (quoting *E. States Health & Welfare Fund v. Philip Morris, Inc.*, 11 F. Supp. 2d 384, 394 (S.D.N.Y. 1998). Nor does Defendants' purported defense "aris[e] out of their duty to enforce federal law." *Wyoming*, 443 F.3d at 1224 (quotation omitted).

## B.  Plaintiffs' injuries did not arise on federal enclaves

Federal enclave jurisdiction does not exist, since Plaintiffs' claims are expressly limited to

injuries occurring on non-federal land. Mot. at 35; Compl. ¶ 542. By contrast, in Defendants' cases, the injuries occurred and thus arose on federal enclaves.[15] Unlike in *Fung v. Abex Corp.,* 816 F. Supp. 569, 571 (N.D. Cal. 1992), Plaintiffs did not "fail to disclose . . . where pertinent events occurred."

### C.   OCSLA does not create federal jurisdiction

Jurisdiction under the Outer Continental Shelf Lands Act (OSCLA) makes little sense for injuries in a landlocked state, caused by conduct that is not specifically related to the OCS. No court has read OCSLA so expansively, and such a reading is not supported by the purpose or text of the statute. *Cf. Pac. Operators Offshore, LLP v. Valladolid,* 565 U.S. 207, 221-22 (2012). Defendants cite cases with a *direct* connection to a specific OCS operation. *See* Mot. at 36-37 & n.6; Opp'n at 38. Indeed, one court found that the same cases Defendants cite did not extend OCSLA jurisdiction to torts "that occurred entirely onshore . . . merely because some of the gas . . . originated on the OCS." *Targa Midstream Servs. LLC v. Crosstex Processing Servs. LLC,* No. H-14-2256, 2014 U.S. Dist. LEXIS 199746, at *11-12 (S.D. Tex. Nov. 25, 2014).

Defendants' argument has no "limiting principle" preventing the removal of state claims that are only "tangentially related" to the OCS. *Id.* at *16-17.[16] Plaintiffs' claims concern Defendants' overall conduct, not whatever unknown fraction of their fossil fuels was produced on the OCS. No case holds removal is appropriate if some fuels from the OCS *contribute* to the harm. This case cannot be removed based on speculative impacts; immediate and physical impact is needed. *See*

---

[15] *Akin v. Ashland Chem. Co.,* 156 F.3d 1030 n.4 (10th Cir. 1998); *Rosseter v. Indus. Light & Magic,* No. C-08-04545, 2009 U.S. Dist. LEXS 5307, at *4 (N.D. Cal. Jan. 27, 2009); *Richards v. Lockheed Martn Corp.,* No. 11-cv-1033, 2012 U.S. Dist. LEXIS 191331, at *3-4 (D.N.M. Mar. 1, 2012).

[16] *Accord e.g. Plains Gas Solutions, LLC v. Tenn. Gas Pipeline Co.,* 46 F. Supp. 3d 701, 704-05 (S.D. Texas 2014); *Fairfield Indus. v. EP Energy E&P Co., L.P.,* No. H-12-2665, 2013 U.S. Dist. LEXIS 196376, at *12-13 (S.D. Tex. May 2, 2013) (no jurisdiction where dispute is "far removed" from OCS activity).

*Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1210, 22-23 (5th Cir. 1988).

### D.  Defendants fail to establish bankruptcy jurisdiction

Defendants offer no evidence of how Plaintiffs' claims relate to any estate or affect any creditor's recovery. Opp'n at 39-40. They suggest unspecified bankrupt entities are indispensable parties, but joint tortfeasors are not indispensable. *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). Nor would it matter if Defendants have third-party claims against bankruptcy estates. *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 995 (3d Cir. 1984); *see also Union Oil Co. of California v. Shaffer*, 563 B.R. 191, 198–200 (E.D. La. 2016). Jurisdiction is also inappropriate under the "police or regulatory powers" exception. Opp'n at 40. Plaintiffs do not seek any relief from a debtor in bankruptcy, advantage over creditors or to protect any interest in the debtor's property. *City & Cty. of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1124-25 (9th Cir. 2006).

## CONCLUSION

Federal jurisdiction is strictly limited. Defendants have not met their burden to prove that jurisdiction exists for these claims for local injuries; it does not. Jurisdiction does not lie just because the federal government might have an interest in the subject of the suit. Defendants' arguments for jurisdiction have no discernible limits. As this Court does not have jurisdiction, it must remand.


Dated: November 13, 2018                    Respectfully submitted,

                                            /s/ *Kevin S. Hannon*
                                            Kevin S. Hannon
                                            THE HANNON LAW FIRM, LLC
                                            1641 Downing Street
                                            Denver, CO 80218
                                            Telephone: (303) 861-8800
                                            Fax: (303) 861-8855
                                            E-mail: khannon@hannonlaw.com

David Bookbinder
D.C. Bar No. 455525
NISKANEN CENTER
820 First Street, NE, Suite 675
Washington, DC 20002
E-mail: dbookbinder@niskanencenter.org

Marco Simons
Richard Herz[17]
Michelle C. Harrison
EARTHRIGHTS INTERNATIONAL
1612 K Street NW #401
Washington, DC 20006
Telephone: (202) 466-5188
Fax: (202) 466-5189
E-mail: marco@earthrights.org
E-mail: rick@earthrights.org
E-mail: michelle@earthrights.org

*Counsel for Plaintiffs*

---

[17] Based in CT; admitted in NY; does not practice in DC's courts.

**CERTIFICATE OF SERVICE**

I hereby certify and affirm that on the 13th day of November 2018, I electronically filed a

true and correct copy of the foregoing filing with the Clerk of the United States District Court for

the District of Colorado using its CM/ECF system and served the same via the CM/ECF system on

all counsel of record.

s/ Kevin S. Hannon